OPINION
Plaintiffs-appellants, Catherine and Angela Nicoson ("appellants"), appeal from the judgment of the Lake County Common Pleas Court, Juvenile Division, denying their complaint to establish visitation with their minor half-sister, Colleen Marie Nicoson.
On March 27, 2000, appellants filed their complaint to establish visitation, asking the court to grant them regular visitation with Colleen. Appellants alleged Colleen was born to their unmarried mother, allowing them to ask for visitation under R.C. 3109.12. Their mother, Joan Hacker, married Colleen's natural father, John Boros, on April 8, 2000.
On July 7, 2000, Hacker, Colleen, and Boros, now joined as party defendants, filed a motion for summary judgment, contending the juvenile court lacked jurisdiction over the matter due to the marriage of the child's natural parents. On November 24, 2000, with leave of court, appellants filed their brief in response, arguing that, because the marriage followed the filing of their complaint, Hacker was an unmarried woman for purposes of R.C. 3109.12, giving the court jurisdiction to enter a visitation order. On December 14, 2000, the trial court issued its judgment entry granting the defendants' summary judgment motion. Appellants have appealed from this judgment.
Whether a court has jurisdiction of the subject matter of an action is a question of law. Burns v. Daily (1996), 114 Ohio App.3d 693, 701. Therefore, an appellate court conducts a de novo review. Id.
R.C. 3109.12 provides:
 "[A.] If a child is born to an unmarried woman, the parents of the woman and any relative of the woman may file a complaint requesting the court of common pleas of the county in which the child resides to grant them reasonable companionship or visitation rights with the child. If a child is born to an unmarried woman and if the father of the child has acknowledged the child* * *the father may file a complaint requesting that the court of appropriate jurisdiction of the county in which the child resides grant him reasonable parenting time rights with the child and the parents of the father and any relative of the father may file a complaint requesting that the court grant them reasonable companionship or visitation rights with the child.
 "[B.] The court may grant the parenting time rights or companionship or visitation rights requested under division (A) of this section, if it determines that the granting of the parenting time rights or companionship or visitation rights is in the best interest of the child * * *.
 "The marriage or remarriage of the mother or father of a child does not affect the authority of the court under this section to grant the natural father reasonable parenting time rights or the parents or relatives of the natural father or the parents or relatives of the mother of the child reasonable companionship or visitation rights with respect to the child.
* * *."
 In Stout v. Kline (Mar. 28, 1997), Richland App. No. 96-CA-71, unreported, 1997 Ohio App. LEXIS 1947, the Fifth District Court of Appeals held that R.C. 3109.12
did apply to the natural parents of a child who married one another after the child's birth. The court rejected the parents' argument of parental autonomy, finding that R.C. 3109.12 applied because the parents were not married at the time of the child's birth.
The Fourth District Court of Appeals reached the same conclusion inMoore v. Strassel (Feb. 26, 1998), Pickaway App. No. 97 CA 32, unreported, 1998 Ohio App. LEXIS 883. In Moore, the mother, following the child's adoption by his step-father, petitioned the court to terminate the visitation rights of her father, the child's maternal grandfather. The court noted that step-parent adoptions do not terminate the relationship of the child with the family of the biological parent whose status is not changed by the adoption. Further, the intact family unit created by the adoption does not alter the fact that the child was born to an unwed mother. The court found the applicability of the statute hinges on whether the mother was unmarried at the time the child was born.
We decline to follow the reasoning of the Fourth and Fifth District Courts of Appeals. To do so would create a distinction between two classes of children living with their married natural parents based upon the date of their marriage. The intent of the statute primarily is to safeguard the visitation and companionship rights of a child's maternal and paternal relatives or the other biological parent if the mother or father marries another. The statute also strives to continue the relationship between the natural father and the child by establishing parenting time for the biological father. The statute recognizes that the natural father and maternal and paternal relatives of a child born to an unmarried mother often play a significant role in the care and upbringing of a child, which can be strained or severed as time progresses, especially if the mother or natural father marries. To that end, the statute provides for visitation if the mother or father marries. This provision of R.C. 3109.12 is geared toward the possibility of the mother or father marrying a third party, and not what is present in the instant case.[1] Here, the natural parents married each other, creating the same family unit as would have existed had their marriage preceded their daughter's birth. Appellants' interpretation of R.C. 3109.12 would allow the state to interfere in this instance, but not if the mother had married the natural father even an instant before their child's birth. R.C. 3109.12 applies if the father or mother marries a third party but not if the mother and father marry each other.
This view is buttressed by the recent decision of the United States Supreme Court in Troxel v. Granville (2000), 530 U.S. 57. In Troxel, the Supreme Court considered a statute from the state of Washington permitting any person to petition for visitation rights at any time. Granted, the statute is much broader than that at issue here. Even so, the parents' fundamental right under the Fourteenth Amendment's due process clause, protecting their liberty interests to make decisions regarding the care, custody, and control of their children, is fundamental in our society. Id. at 65. If there is no finding of parental unfitness, there is a presumption that fit parents act in the best interests of their child. Id. at 68.[2]
There is no finding in the record that the mother is unfit. Therefore, there is a presumption of fitness, which the trial court took into account below. The intent of the statute is to protect the rights of the biological parents and those of the maternal and paternal relatives when a child is born to an unmarried mother, recognizing the difficulties such relationships can endure and undergo during the child's minority. However, once the natural parents marry each other, the state has no further interest in interfering in the family unit.
In their summary judgment motion, the appellees argued that applying R.C. 3109.12 in this situation would result in a married couple whose children are born after their marriage being treated differently than a married couple whose children are born prior to the date of marriage. Although appellees did not provide any law on point, they basically asserted an equal protection argument.
The Fourteenth Amendment to the United States Constitution provides that a state shall not deny any person the equal protection of the law. In other words, a state may not treat people differently under its laws on an arbitrary basis. Harper v. Virginia State Bd. of Elections (1966),383 U.S. 663. Unless a suspect class or a fundamental right is involved, a legislative distinction must bear a rational relationship to a legitimate state interest to comply with the Equal Protection Clause.Clements v. Fashing (1982), 457 U.S. 957, 963. State laws must be applicable to all persons under like circumstances and not subject people to an arbitrary exercise of power. Conley v. Shearer (1992),64 Ohio St.3d 284, 288. The equal protection guarantee of Section 2, Article I, of the Ohio Constitution essentially is identical to that afforded by the Equal Protection Clause of the Fourteenth Amendment.Kinney v. Kaiser Aluminum Chem. Corp. (1975), 41 Ohio St.2d 120, 123.
To apply R.C. 3109.12 to the facts of this case would result in children born of the same parents being treated differently by the law. If Hacker and Boros have another child born after their marriage, the state would not be able to establish visitation for appellants by means of R.C. 3109.12. However, by applying R.C. 3109.12 to the instant case, the state could grant appellants visitation for Colleen but not for a full sibling, living in the same family unit. There is no rational basis for distinguishing between a child born prior to the marriage of the natural parents and a child born to the same parents after their marriage. Therefore, R.C. 3109.12 violates the Equal Protection Clause as applied to the facts of this case.
Appellants' assignment of error is overruled. The judgment of the Lake County Court of Common Pleas, Juvenile Division, is affirmed.
JUDGE DIANE V. GRENDELL, O'NEILL, P.J., concurs in judgment only, FORD, J., dissents with Dissenting Opinion.
[1] R.C. 3109.12 does not apply when the natural parents marry each other. This is not a question of ambiguity, but rather logic and the plain language in R.C. 3109.12, this section concerns parenting and visitation rights when a child is born to an unmarried woman. The trust of the applicacable portion of the statute is protecting parenting rights of the natural father. There is no need to protect these rights when the natural father marries the child's mother. Such marriage of the natural parents moots the need for R.C. 3109.12.
Our reference to Troxel v. Granville (2000), 530 U.S. 57, reinforces our conclusion. In Troxel, the U.S. Supreme Court reaffirms the parental rights of natural parents, consistent with our conslusion that no statute is needed to preserve the parenting and visitation rights of natural parents who marry each other and reside together.
[2] We cite to Troxel as support for the proposition that the natural parent, who is fit, is best able to determine who will visit with his or her child. This concern is hardly new in jurisprudence but is more of a reaffirmation of a long-standing principle. There is no contention the natural parents were not fit.